### In re HIRZEL et al.

#### (Circuit Court, S. D. New York. January 6, 1893.)

CUSTOMS DUTIES—CLASSIFICATION—CRUDE COCAINE.

Crude cocaine, being an alkaloid derived from the leaves of the coca plant, in the extraction or purification whereof alcohol was used, but which contained, as imported, from 10 to 20 per cent. of impurities, and

was used chiefly in the manufacture of oleates, cocaine salts, hydrochlorate of cocaine, cocaine wines, etc., although occasionally used for external applications as a cheap substitute for the pure article, is dutiable as a chemical compound or alkaloid at 25 per cent. ad valorem, under the provisions of Schedule A, par. 76, of the tariff act of October 1, 1890; not as a medicinal preparation, in the preparation of which alcohol is used, as provided for in paragraph 74 of said schedule and act.

## At Law.

This was an appeal by the importers from a decision of the board of United States general appraisers affirming the decision of the collector of customs at the port of New York in the classification for duty of certain crude cocaine imported into said port at different dates during the year 1891, and which was assessed for duty by the collector as a chemical compound at 25 per cent. ad valorem, under the provisions of Schedule A, par. 76, of the tariff act of October 1, 1890, which is as follows: "76. Products or preparations known as 'alkalies,' 'alkaloids,' 'distilled oils,' 'essential oils,' 'expressed oils,' 'rendered oils,' and all combinations of the foregoing, and all chemical compounds and salts not specially provided for in this act, 25 per centum ad valorem." The importers protested in the case of each of the entries that the merchandise was a medicinal preparation, in the preparation of which alcohol is used, and dutiable at 50 cents per pound, under paragraph 74 of said schedule and act, which is as follows: "74. All medicinal preparations, including medicinal proprietary preparations, of which alcohol is a component part, or in the preparation of which alcohol is used, not specially provided for in this act, 50 cents per pound." The importers appealed to the board of United States general appraisers, and a great deal of testimony was taken before said board, from which it appeared that the article was an alkaloid extracted from the leaves of the coca plant, and that alcohol was used in the production of this material either as a solvent or a purifier. It also appeared that the article as imported contained from 10 to 20 per cent. of impurities. From the testimony of one expert witness it was shown that the substance in question was not suitable for medicinal use, but was used almost, if not entirely, in the manufacture of certain oleates and cocaine salts and preparations of refined cocaine, and that it could not be used as a medicine in the condition as imported. There was also some testimony, which was uncontradicted by the importers, that all alkaloids were medicine alkaloids. The testimony of one expert witness was taken on behalf of the importers, from which it was shown that this substance was crude, and was an alkaloid, in the preparation of which alcohol was commonly, if not universally, used, and always was used in the purification of cocaine after it had been got out of the leaves; that large quantities of this crude cocaine were used by the makers of cocaine wines, the wine having a solving power over the cocaine, and making it a cocaine wine; that it might be used in the preparation of oleates without further purification, although the witness always made oleates from the pure article; that this crude cocaine was used in a very small degree as a medical article in its present condition, and sometimes for external applications, to be applied to felons or boils, or by dentists as an anaesthetic, as a cheap substitute for the purer article. The testimony of two well-known druggists of long experience was produced on behalf of the government, who testified that they did not use this crude cocaine pharmaceutically, nor in filling physicians' prescriptions, and that they did not deal in it.

The board of general appraisers found as facts "(1) that the cocaine in question is a crude alkaloid, in the extraction of which alcohol was used; (2) that it is known as 'crude cocaine,' and is handled exclusively by manufacturing pharmacists; (3) that it is not offered, bought, sold, used, or known as a medicinal preparation; (4) that it is not a medicinal preparation."

As a conclusion of law the board of appraisers overruled the protests of the importers, and affirmed the decision of the collector. The importers thereupon appealed the case into the circuit court, under the provisions of the so-called "Administrative Act of June 10, 1890;" and, no further evidence being taken by either side, the case came on for trial in the circuit court upon the return of the board of general appraisers as filed. After argument by the United

States attorney in behalf of the collector and government, and by counsel for the importers, the circuit court delivered the following decision.

Stanley, Clarke & Smith, (Stephen G. Clarke, of counsel,) for importers.

Edward Mitchell, U. S. Atty., and James T. Van Rensselaer, Asst. U. S. Atty., for collector and the United States.

COXE, District Judge, (orally.) The question at issue in this cause is whether or not the importation should be classified as an "alkaloid" under paragraph 76 of the act of 1890, as classified by the collector, or as a "medicinal preparation" under paragraph 74 as the importer insists it should have been classified. It is conceded on all sides that the importation is an "alkaloid." The burden, therefore, is upon the importer to establish two propositions: First, that the importation is a medicinal preparation; and second, that the term "medicinal preparation" is more specific than the term "alkaloid." It seems to me that the question first stated is one of fact, which, upon the testimony, the appraisers might well have determined as they did, namely, that the importation was not a "medicinal preparation." Certainly within the established rule, the court will not be justified in setting aside their finding as against the weight of evidence. But irrespective of this suggestion, it appears in proof, uncontradicted, that all alkaloids are medicinal; and that all medicinal preparations are not alkaloids. Therefore, on the proof, the term "alkaloid" would be a more specific designation than the one contended for by the importer. In other words, if it were established that both sections of the statute describe the importation, the collector has chosen the more specific of the two upon the evidence now presented to the court.

The decision of the board is affirmed.